**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff/Respondent,

v.

OZRO GRAHAM,

                Defendant/Petitioner.

CASE NUMBER: 00-90036

HON. MARIANNE O. BATTANI

_____/

## OPINION AND ORDER DENYING PETITIONER'S § 2255 MOTION

Before the Court is Petitioner's Motion Filed Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 674). The Court has reviewed the pleadings and finds oral argument will not aid in the resolution of this motion. See 28 U.S.C. § 2255; E. D. Mich. LR 7.1(e)(1). For the reasons that follow, the Court **DENIES** the motion.

### I. BACKGROUND

Petitioner Ozro Graham pleaded guilty to Conspiracy to Distribute Cocaine and Cocaine Base in violation of 21 U.S.C. § 841 and § 846, and Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956 pursuant to a Rule 11 Plea Agreement. Graham subsequently filed a *pro se* motion to set aside the plea agreement as nonbinding because he signed the agreement on May 26, 2005, the day after the expiration of the offer. (Doc. No. 468, 469). Thereafter, his counsel filed a motion to withdraw the guilty plea. (Doc. No. 480).

The Court heard argument prior to sentencing and denied the motion. The Court then sentenced Graham to 210 months on both counts, to run concurrently.

Petitioner appealed unsuccessfully. The facts as outlined in the appellate decision follow:

> This case arose out of an elaborate drug distribution and money-laundering ring that operated throughout the 1990's in Michigan, California, Tennessee, West Virginia, Ohio, Pennsylvania, Georgia, and Saint Lucia, West Indies. The organization was led by Riley Troy Graham and was centered in Detroit, Michigan. Graham and his associates initially conducted their operation by acquiring cocaine in California, hiding it inside candles, and shipping it to Michigan via private delivery companies like UPS. Various seemingly legitimate businesses were used as fronts for the operation. In particular, a business known as "The Business and Postal Center," located in Beverly Hills, California, was used to facilitate the shipment of the drugs. Companies known as "Active Wear" and "B&B Wholesale" were also used as fronts. After the DEA learned that the organization was shipping cocaine in candles, however, the conspirators were forced to change their business model. As a result, the hub of the operation was moved to Nashville, Tennessee, and Riley Troy Graham started a trucking company that was then used to ship cocaine across the country. Graham's organization made illicit profits on the order of millions of dollars and even tried to use some of the profits to develop the first casino resort on Saint Lucia.

U.S. v. Graham, No. 06-1026, 2008 WL 2092274 at **4-5 (6th Cir. May 16, 2008).

In his 2255 motion, Graham raises a claim of ineffective assistance of counsel. In support of his claim, he lists the following: failure to investigate or discover potentially exculpatory evidence, misinformation, not addressing miscalculation of criminal history points and 2D1.1 enhancement, coercion, failure to object to court participation, failure to correctly argue plea withdrawal, failure to immediately withdraw plea. Doc. No. 674. In addition, Graham claims that the Court violated Rule 11 by participating in plea

negotiations, that his Plea Agreement constituted an unenforceable contract; and that he is actually innocent. The Court addresses the merits below.

## II. STANDARD OF REVIEW

A federal prisoner may file a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence on the ground that the sentence imposed violates the United States Constitution. When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. Green v. Wingo, 454 F.2d 52, 53 (6th Cir. 1972); O'Malley v. United States, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." Green v. Wingo, 454 F.2d at 53; O'Malley, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. Loum v. Underwood, 262 F.2d 866, 867 (6th Cir. 1959), United States v. Johnson, 940 F.Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted) (§ 2254 case); Clemmons v. Sowders, 34 F.3d 352, 354 (6th Cir. 1994); see also United States v. Cappas, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying Brecht to a § 2255 motion). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with

the rudimentary demands of fair procedure.  Reed v. Farley, 512 U.S. 339, 354 (1994); Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996).

### III. ANALYSIS

Because Graham brings his petition *pro se*, the Court is required to construe the pleadings liberally.  Haines v. Kerner, 404 U.S. 519 (1972); Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Even a pro se litigant must set forth facts that entitle him to relief. O'Malley v. United States, 285 F.2d 733, 735 (6th Cir. 1961) (noting that a movant must set forth facts which entitled him to relief when making a motion to vacate or set aside a judgment under § 2255).

In his petition, Graham omitted any factual bases for his claims.  In its response, the Government asserts that, given the omission,  the Court lacks jurisdiction to consider the motion.  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001).

Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Court requires that a motion must among other things, "state the facts supporting each ground" for relief.  Neither case law nor the Rules requires the Court to guess the factual basis underpinning Petitioner's claim or construct the legal arguments. Nevertheless, in his twenty-four page reply, Graham elaborates on his claims, and this pleading gives the Court sufficient notice as to how Graham believes his rights have been violated and why he is entitled to relief.  Therefore, the Court will address his claims.

At the outset, the Court observes that "collateral review under 28 U.S.C. § 2255 is not a substitute for direct review, [and] a movant ordinarily may only raise claims in a §

4

2255 motion that he raised on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998)). In short, a movant has procedurally defaulted all claims that he neglected to raise on direct appeal. Courts will exempt a movant from that rule, however, if he can prove either (1) "that he is actually innocent of the crime for which he was convicted," or (2) "that there is valid cause for the default, as well as prejudice resulting from the default." With this understanding, the Court examines the alleged errors.

### A. Actual Innocence

Because a claim of actual innocence exempts Graham from the procedural default rule, the Court begins its consideration with this claim. See Herrera v. Collins, 506 U.S. 390, 404 (1993) (stating that a procedural claim of actual innocence constitutes "a gateway through which a habeas petitioner must pass to have [her] otherwise barred constitutional claim considered on the merits"). To establish actual innocence, Graham must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 329, (1995). This requires him "to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324. The standard "does not require absolute certainty." House v. Bell, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). Nevertheless, it "is demanding and permits review only in the extraordinary case." Id.

This is not the extraordinary case, and Graham has offered no evidence that he is actually innocent of the drug and money laundering conspiracies. Instead, he focuses on

the inequity of his resources compared to the resources of the government, his adherence to his assertion of innocence until his plea, the lack of success of his pretrial motions, his insistence that the grand jury transcripts show he merely made cameo appearances in the life of the conspiracy, his assertion that the charges against him were lodged merely to accomplish imprisonment of his brother, Riley Graham.

The assertions made in support of Graham's contention that he is innocent do not meet the standard set forth in Schlup. There is no evidence advanced to support his claim. Accordingly, the Court rejects this basis for relief.

### B. Ineffective Assistance of Counsel

According to Graham, he received ineffective assistance of counsel as exemplified by his attorney's pretrial conduct, his representation during the plea process, and during sentencing. There are two elements to a successful ineffective assistance claim: 1) the attorney's performance must have been deficient, and 2) the deficient performance must have actually prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To be "deficient" for constitutional purposes, an attorney's performance must have fallen below "an objective standard of reasonableness." Id. at 688. Courts should have a strong presumption that the challenged conduct was reasonable because the universe of reasonable representation is extremely vast. Id. at 689. It is up to Petitioner to show that the attorney's conduct could not have been sound trial strategy, and to point out the specific instances of deficient conduct. Id. Even if Petitioner shows that his trial counsel's conduct was deficient, he must show that the deficiency actually prejudiced his case, meaning he must show that "there is a

6

reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

### 1. Failure to Conduct Pretrial Discovery

Graham argues that his attorney was ineffective for failing to engage in pretrial discovery that would have shown that Graham's prior manslaughter conviction was not related to the drug conspiracy, failing to file a motion to suppress that evidence, and failing to file a motion to suppress other evidence such as Western Union receipts that were issued before 1995. Graham adds that the age of the receipts raises a statute of limitations defense.

Although a failure to file a motion to suppress may support a claim of ineffective assistance in certain instances, see, e.g., Kimmelman v. Morrison, 477 U.S. 365, 385-86 (1986) (finding total failure to conduct pretrial discovery and file suppression motion, not due to strategic considerations, but because counsel was unaware of the State's intention to introduce evidence, was constitutionally deficient assistance of counsel), In contrast, in this case there is no evidence that a motion to suppress would have been successful. Further, the record shows that counsel did file pretrial motions on Graham's behalf, including a motion to dismiss based on the statute of limitations, see Doc. No. 309, which the Court denied. Consequently, he cannot meet the first prong of Strickland. Nor can Graham show that he was prejudiced or that his counsel's actions fell below an objective level of reasonableness relative to motion practice.

### 2. Coercion

Next, Graham argues that his counsel was ineffective as reflected by the lack of success relative to the motion filed before trial and the proceedings leading up to trial. He also challenges his attorney's trial strategy, which was "to sit back and let all the testimony come out." Doc. No. 695 at 7. This strategy was designed to show the bulk of the evidence was against Ozro Graham's brother, codefendant Riley Graham. Ozro Graham characterizes this strategy as "terrible" and asserts it falls "outside the wide range of processionally competent assistance." Id.

Petitioner's dissatisfaction and second-guessing are insufficient to raise a viable claim pursuant to his Sixth Amendment rights. Graham can overcome the presumption of his counsel's competence only by proving that Petitioner's representation was (a) unreasonable under the prevailing professional norms, and (b) not a sound strategy. See Kimmelman, 477 U.S. 365. Here, the record unambiguously reveals that counsel's motions met prevailing professional norms and the tactical choices were well informed and well grounded.

Additionally, the Court notes that Riley Graham's decision to plead guilty impacted the viability of that trial strategy. After that decision was made, the remaining defendants, met with their attorneys and the government to discuss plea agreements. According to Petitioner, his attorney failed to confront court participation and the coercion by the government in tying Riley's plea agreement to Ozro's. The assertion of coercion by the Court is addressed below.

### 3. Court Interference in the Plea

Graham maintains that the Court violated Rule 11 "by giving its opinion on what is not a good plea and then [ ] extending the Government's time to resolve the situation. Doc. No. 695 at 5. Rule 11 prohibits judicial participation because it is "inherently coercive." United States v. Barrett, 982 F.2d 193, 194 (6th Cir. 1992).

> The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not.

Id.,(citation omitted).

In Williams v. U.S., No. 00-1687, 2002 WL 31133383 (6th Cir. Sept. 25, 2002) the defendant asserted his plea was invalid based on court participation, specifically comments made by the district court judge during a plea hearing. According to the defendant, the judge stated, "Do you know that if you are convicted, this is not going to get any lower?" Id. In assessing the comment, the appellate court found it did not constitute participation or coercion. After making the comments, "the district judge confirmed that [the defendant] wanted to plead guilty, and made sure [he] had discussed these issues with his attorney, was satisfied with his attorney's representation, and explained that [the defendant] was waiving his right to a jury trial by pleading guilty." Id. at *6. Based on a review of the interaction in its entirety, the court of appeals characterized the lower court judge's conduct as informational.

The analysis applies here. The Court's conduct stands in stark contrast to that condemned in Barrett, 982 F.2d at 193, where the trial court actually organized and participated in plea negotiations via the telephone. In this case, the Court merely observed, long before trial and Graham's guilty plea, that the offer on the table was not resulting in any guilty pleas. To the extent that Graham believes there was judicial participation in the plea negotiation process, the Court notes it had no discussions with counsel concerning the facts of Graham's case, any aspect of sentencing, or his possible guilt or innocence. Allowing counsel the opportunity to discuss a plea with his client does not amount to coercion to plead guilty.

### 4. Withdrawal of Plea

Graham challenges the effectiveness of his attorney's representation based upon the failure to move immediately to withdraw the guilty plea, and the failure to effectively argue withdrawal. In the context of a guilty plea, an attorney must be prepared to advise his client on the range of available options, which requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. With respect to guilty pleas, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). This issue was addressed in Graham's appeal.

> On May 26, 2005, Ozro Graham pled guilty to conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841 and § 846, as well as conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956. At the plea hearing, the district court went to great lengths to ensure that there was a factual basis for Ozro Graham's plea and to

10

guarantee that he understood what he was doing. The district court carefully informed Graham of the rights that he was waiving and the consequences of waiving those rights, and Graham indicated clearly that he understood the significance of his guilty plea. Graham also testified that no one had threatened him or forced him to plead guilty, and that although he was taking medication for depression, he completely understood everything that was happening. Finally, Graham provided a factual basis for his plea by testifying that he had helped his brother distribute cocaine in Michigan and Tennessee and had also laundered the proceeds in various manners so as to conceal the source of the money.

On September 26, 2005, Ozro Graham also sought to withdraw his guilty plea. Even though he was represented by counsel, he decided, like his brother, to take matters into his own hands by filing a pro se motion to withdraw his plea. His motion adopted the reasoning set forth in his brother's pro se motion-i.e., that the plea agreement was invalid since it was entered into after the original offer from the Government had expired. A few weeks later, on October 11, 2005, Ozro Graham's counsel filed another motion seeking to withdraw Ozro Graham's guilty plea. That motion did not rely on the invalid-plea-agreement argument that Ozro Graham had made in his pro se motion. Instead, it claimed that Ozro Graham had been pressured into pleading guilty by his family because of the fact that the generous plea bargain offered to Riley Troy Graham was contingent on Ozro Graham also pleading guilty. The motion also alleged that Ozro Graham had notified his attorney that he wanted to withdraw his plea shortly after entering it, but that his attorney had counseled against doing so.

The district court rejected Graham's motion. Among the factors that the judge found to weigh against Graham were the length of time between the plea and the motion, the unusual amount of time that the district court took with the plea colloquy, and Graham's previous experience with the criminal justice system. The district court also found that Graham understood what he was doing when he entered his plea and was not under duress. After denying Graham's motion, the district court sentenced him to 210 months in prison.

U.S. v. Graham, No. 06-1026, 2008 WL 2092274 at **4-5 (6th Cir. May 16, 2008).

Although the Sixth Circuit was not addressing the guilty plea in the context of an ineffective assistance of counsel claim, the analysis makes clear that his request to withdraw lacked the requisite "fair and just reason." See FED. R. CRIM. P. 11(d)(2)(B).

11

The "Rule 11(d)(2)(B) escape hatch is narrow." United States v. Mays, 593 F.3d 603, 607 (7th Cir. 2010). Therefore, it is reserved for circumstances such as an involuntary and unknowing plea, actual innocence, or legal innocence. Id. Because the plea already has been found to be voluntary, and Graham has failed to show actual or legal innocence, his attorney's lack of success cannot be equated to ineffective assistance.

### 5. Sentencing Enhancement

Graham asserts that his attorney's failure to object to the PSR score of Graham's adjusted offense level of 36, which included a 2-point enhancement for a firearm under U.S.S.G. § 2D1.1(b)(1), constitutes ineffective assistance of counsel. He posits that his part of the conspiracy ended in June 1996, therefore the manslaughter case, which occurred in September 1996, was not part of the instant offence and the enhancement must be removed.

Graham's argument lacks merit. Under longstanding authority, once a conspiracy is established, if it "contemplates a continuity of purpose and continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." United States v. Gardiner, 463 F.3d 445, 463 (6th Cir. 2006) (quotation marks and citation omitted). "Mere cessation of activity is not enough" to establish withdrawal. United States v. True, 250 F.3d 410, 425 (6th Cir.2001) (citing United States v. Lash, 937 F.2d 1077, 1083 (6th Cir.1991)). Instead, "[t]he defendant must present evidence of some affirmative act of withdrawal on his part, typically either a full confession to the authorities or communication to his

co-conspirators that he has abandoned the enterprise and its goals." United States v. Chambers, 944 F.2d 1253, 1265 (6th Cir.1991) (citation omitted).

Further, his assertion is contrary to his Rule 11 Plea Agreement, wherein Graham stipulated that from 1991 "and continuing thereafter up to and including 1998, he was a participant in the illegal distribution of approximately 15-50 kilograms of cocaine. See Doc. No. At 2. Finally, in his Rule 11 Plea Agreement, the parties agreed that "a sentence of imprisonment within the Sentencing Guideline rage of 188 to 235 months. . .is reasonable and an appropriate disposition of the case." Doc. No. 435, p. 4. Graham also agreed not to advocate for a sentence outside of that range. In addition, Graham agreed that in the event his criminal history category was higher than reflected in the attached worksheets, "than a term of imprisonment within the Sentencing Guideline range corresponding to his stipulated adjusted offense level and the higher criminal history category. . .would be a reasonable and appropriate disposition of the case. Id., p. 5.

Despite the increased calculation from 235 to 262 months, the Court sentenced Graham to 210 months, which fell within the parameters of the Rule 11 Agreement. Therefore, even if Graham were correct about the enhancement, he cannot show prejudice.

## IV. CONCLUSION

Therefore, the Court **DENIES** Petitioner's motion. Because the Court has found no merit to Petitioner's claims, it **DENIES** Petitioner's Motion for the Request of Court Records and Discovery Package. (Doc. No. 654). These documents would not have

13

aided Graham in presenting his arguments. Finally, under Rule 11(a) of the Rules Governing § 2255 Proceedings, a court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue. . .only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Based on the above discussion, Petitioner has not made a substantial showing of the denial of a constitutional right. Petitioner's claims do not establish that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is **DENIED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT JUDGE

DATED: November 19, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were mailed to Petitioner and counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Deputy Clerk